UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

WILLIAM N ARMOUR,

                Plaintiff,                Case No. 17-13671

v                                          Honorable Thomas L. Ludington

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____/

**ORDER ADOPTING REPORT AND RECOMMENDATION, OVERRULING OBJECTIONS, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND AFFIRMING THE DECISION OF THE COMMISSIONER**

On September 18, 2018, Magistrate Judge Morris issued a Report and Recommendation, ECF No. 14, addressing Plaintiff William N. Armour's motion for summary judgment and Defendant Commissioner of Social Security's ("Commissioner") motion for summary judgment. ECF No. 12, 13. In the report, Judge Morris recommended denying Plaintiff's motion for summary judgment and granting Defendant's motion for summary judgment. On September 25, 2018, Plaintiff timely filed an objection to the Report and Recommendation. ECF No. 16.

Pursuant to a de novo review of the record, the Plaintiff's objections will be overruled and the report and recommendation adopted.

**I.**

Neither party has objected to Judge Morris' summary of the relevant background of the case. For that reason, large portions of that factual summary will be reproduced here.

**i.**

On April 14, 2015, Plaintiff filed an application for Disability Insurance Benefits that was subsequently denied on initial review. On November 3, 2016, Plaintiff appeared before ALJ

Crystal L. White-Simmons for his administrative hearing. (PageID.60-95). Answering the ALJ's questions, he explained he was divorced and had been living with his mother for about four years. (PageID.65-66). Climbing the stairs to their flat sometimes caused him "issues" depending on the pain in his back and right knee. (PageID.66).

At the time of the hearing, Plaintiff was working twenty-four to twenty-six hours a week at Walmart as a cashier. (PageID.66-67). He had initially been training at forty hours a week, but had informed his employer that it was "too painful to stand there"; two weeks prior to the hearing, he "went in to resign because it was just too hard to stand doing cashiering," but ended up staying on "working on the floor" in the cosmetics department. (PageID.67).

Prior to his job at Walmart, Plaintiff had last worked as a patient transporter from February 1998 to February 2015. (PageID.70-71). He transported patients throughout a hospital or medical center on beds or stretchers or in wheelchairs. (PageID.72). He estimated that the most he had to lift was about 250 pounds, when he needed to pull a patient by himself. (PageID.72). Plaintiff essentially left the position after he injured his shoulder "pulling a bed with a patient in it," though he technically remained employed as a patient transporter until December 2015, when the company informed him it "couldn't find [him] another position" and let him go. (PageID.72-73). He did not work again until he began working at Walmart in August 2016. (PageID.73).

Plaintiff said he was prevented from working full time by "[a] lot of pain" in his back, lower back, left shoulder, and knee. (PageID.73-74). He rated his back pain at the moment as a three, with one being "not that bad" and ten "excruciating." (PageID.74). Three was "about the average" when he was "not doing anything." (pageID.75). At its worst, the pain had gotten as bad as ten and he had been unable to move from his bed for two days. (PageID.75). The pain would

strike "out of the blue," when he "would turn or bend down and . . . [his] back will just go out." (PageID.75).

He rated his left shoulder pain at about a two, which he said was also typical for him. (PageID.75-76). The worst pain he had experienced in his shoulder was about a seven, brought on by "nothing in particular." (PageID.78). Periodically he received injections in his shoulder that provided relief lasting about two months, though he needed to wait longer to receive the next injection; his last injection had been two weeks prior. (PageID.76). He also sometimes received injections for pain in his neck. (*Id.*). Even with the injections, neither his pain nor the tingling in his left hand ever completely dissipated. (PageID.76-77). He took Lyrica for the tingling, but reported that it did not work "at all," and his doctors had advised him "the only thing . . . that will work is probably surgery" for the pinched nerve in his neck, after which he could expect six months of recovery. (PageID.77). He had attended physical therapy for his shoulder earlier that year, but "insurance only covers so much physical therapy"—besides which, he said, the therapy did "[n]ot really" help. (PageID.82).

Additionally, Plaintiff testified to pain in his right knee that was "constantly at about a five or a six," but "standing at Walmart[,] . . . about a seven or eight." (PageID.78-79). Before he had begun working at Walmart, it had been "maybe a two or a three." (*Id.*). Walmart did not allow him to use a stool to sit while cashiering. (*Id.*). Plaintiff explained he was "supposed to start physical therapy" for his knee, but that the physical therapist had not called him back. (PageID.81).

Plaintiff's Lyrica sometimes caused sleepiness and dizziness. (PageID.79). He also took Motrin and Norco, which helped, though he could not take both simultaneously. (PageID.80). He reported he was "trying not to" take Motrin, though he still had a prescription for it. (*Id.*). He also took blood pressure medication and medication that "somewhat" helped keep his heart from

beating fast. (PageID.81). Although he had walked with a limp for forty-five years, Plaintiff did not use a cane, a walker, or any other assistive device. (*Id.*).

Plaintiff's last emergency room visit had been the previous year, when his "sugar" and blood pressure dropped due to his hypoglycemia. (PageID.80). He stated he was not diabetic but that "the reason for [his] blood pressure dropping, . . . they still don't know." (PageID.81).

Speaking to his physical limitations, Plaintiff testified that he could lift about ten to fifteen pounds; any more would cause back and shoulder pain. (PageID.82). He explained that when doing laundry, he had to make multiple trips to the laundromat to avoid carrying too much weight. (PageID.83). In his position at Walmart, he could stand up to two hours before taking a scheduled break of either fifteen minutes or lunch. (*Id.*). During that time, he would usually sit in a nearby restaurant, since the break room was "all the way in the back of the store." (PageID.83). He could walk about a block or a block and a half without pain; he did not have to walk farther to reach a bus stop. (PageID.84).

Stooping, kneeling, crouching, crawling, and bending all caused him knee and back pain. (*Id.*). He estimated he could sit for an hour to an hour and a half before he started having back pain and would need to stand for about ten minutes. (*Id.*). Though Plaintiff sometimes experienced tingling in his left (non-dominant) hand, he stated he had no problem using his hands, including for grabbing, picking up, or holding on to objects. (PageID.84-85). Additionally, Plaintiff testified that due to a brain injury at age three, "the whole right side of [his] body is smaller than the left side . . . and weaker." (PageID.85).

Plaintiff's work schedule fluctuated, but on an average day he would wake up around 7 in the morning and do some chores around the house, such as washing dishes. (PageID.86). He did the laundry every two weeks or so, and shared cooking and grocery shopping duties with his

mother. (PageID.86-87). Self-care such as showering and dressing presented no obstacle. (PageID.87). He and his mother both took care of vacuuming, sweeping, mopping, and similar domestic tasks, though he took on more responsibility because his mother's health was worse. (*Id.*).

He went to church and socialized with friends and family on a regular basis, although he would not get up to do so if his back was in pain, and he enjoyed reading, watching sports, and watching television. (PageID.87). He did not have any issue maintaining his attention or focus throughout the day. (*Id.*). Plaintiff did not drive because his license was suspended. (PageID.67-68). Instead, he took the bus or depended on rides from his mother or friends. (PageID.68). Plaintiff had completed two years of college; he had been enrolled in a special education class at age four but it was thereafter determined he "didn't need it." (PageID.68-69).

Questioning by Plaintiff's representative elicited that Walmart accommodated him with an extra break or "a little longer" break if he needed one. (PageID.88). He had good days and bad days. (*Id.*). Since starting work at Walmart several months prior, he had called in three or four times on days when he was in pain. (PageID.89).

In closing, Plaintiff stated: "I'm not here looking for a handout because if I could work full-time, I would. I've been working since I was 15 and now my body . . . has gotten a lot worse . . . , and I'm still trying to . . . take care of my children because I'm, currently I'm paying child support for my 17 . . . and 12 year old." (PageID.89).

**ii.**

Following the five-step sequential analysis in 20 C.F.R. §404.1520, the ALJ concluded that Plaintiff was not disabled from his alleged onset date of February 28, 2015, through the date of the decision, January 24, 2017. (PageID.45, 55). First, the ALJ found that Plaintiff had not engaged in

- 5 -

substantial gainful activity since his alleged onset date. (PageID.47). Next, the ALJ determined that Plaintiff had the following severe impairments: osteoarthritis of the right knee; shoulder degenerative joint disease with a tear of the left supraspinatus tendon; obesity; degenerative disc disease of the spine; cervical radiculopathy; and cervical spondylosis. (*Id.*). Additionally, she found Plaintiff had nonsevere impairments "including hypertension, scoliosis, and cerebral trauma." (*Id.*). Plaintiff did not, however, have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (PageID.48-49). The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) except the claimant cannot climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps or stairs. The claimant can occasionally balance, stoop, and c[r]ouch, but cannot kneel or crawl. The claimant cannot perform constant flexion, extension or rotation of the neck. The claimant can frequently push, pull, and operate foot controls with right lower extremity and he can frequently reach overhead, handle, finger and feel with the left upper extremity. The claimant can have no exposure to unprotected heights. The claimant also must be able to change from standing to sitting or from sitting to standing after an hour.

(PageID.50).

The ALJ also considered a letter from Plaintiff's primary care physician, Dr. Katrice Herndon. It provides

> I am writing this letter on behalf of William Armour who is a patient in my primary care clinic. Mr. Armour suffered an injury to his neck and shoulder at work in February 2015. Patient had an MRI of the Cervical spine in April 2015 showing interval progression of the disc degenerative disease and moderate to severe foraminal stenosis at multiple levels. Patient also has a rotator cuff tear of his left shoulder. Mr. Armour is unable to work at this time. He is suffering from pain in his left shoulder and cervical spine. He should not push, pull or carry anything greater than l5 lbs. During his treatment and therapy, patient is advised not to work in any position.

PageID.436.

The ALJ determined that Dr. Herndon's letter should be granted only "some limited weight." She held

> Dr. Herndon opined that the claimant was unable to work. Dr. Herndon also opined that the claimant could not push, pull or carry anything greater than fifteen pounds. The letter also noted that the claimant should not work at all during his therapy. As to Dr. Herndon's opinion that the claimant is disabled, whether an individual is disabled is reserved to the Commissioner (96-5p). As for Dr. Herndon's other opinions, that the claimant could not push, pull or carry anything greater than fifteen pounds, it is also not clear whether this was a permanent restriction or meant for the duration of the claimant's therapy. Therefore, the undersigned gives the doctor's letter only some limited weight.

PageID. 53.

The ALJ concluded that Plaintiff was unable to perform his past relevant work as a patient transporter, but found that considering Plaintiff's age, education, work experience, and RFC, jobs that Plaintiff could perform existed in significant numbers in the national economy. (PageID.53-54).

### iii.

Following the ALJ's decision, Plaintiff filed an appeal with the Appeals Council. Pl.'s Compl. at 2, ECF No. 1. The Appeals Council denied his request for review on November 1, 2017. *Id.* The next week he filed his current complaint. *Id.* In March 2018, Plaintiff and the Commissioner filed motions for summary judgment. ECF No. 12, 13. On September 18, 2018, Magistrate Judge Morris filed a Report and Recommendation recommending that Plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and Plaintiff's complaint dismissed with prejudice. Rep. & Rec., ECF No. 14. Plaintiff timely filed objections to the Report and Recommendation. ECF No. 15. First, he claims that Judge Morris erred by finding that the ALJ was correct when she gave Dr. Herndon's letter only "limited weight." *Id.* at 2 – 4. Second, he claims that Judge Morris erred by finding that substantial evidence supported the ALJ's opinion. *Id.* at 4 – 6.

For the following reasons, Plaintiff's objections will be overruled, his motion for summary judgment will be denied, Defendant's motion for summary judgment will be granted, Plaintiff's complaint will be dismissed, and the report and recommendation will be adopted.

**II.**

When reviewing a case under 42 U.S.C. § 405(g), the Commissioner's conclusions are to be affirmed "absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (citations omitted). Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted).

Pursuant to Federal Rule of Civil Procedure 72, a party may object to and seek review of a Magistrate Judge's report and recommendation. See Fed. R. Civ. P. 72(b)(2). Objections must be stated with specificity. *Thomas v. Arn*, 474 U.S. 140, 151 (1985) (citation omitted). If objections are made, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). De novo review requires at least a review of the evidence before the Magistrate Judge; the Court may not act solely on the basis of a Magistrate Judge's report and recommendation. *See Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). After reviewing the evidence, the Court is free to accept, reject, or modify the findings or recommendations of the Magistrate Judge. *See Lardie v. Birkett*, 221 F. Supp. 2d 806, 807 (E.D. Mich. 2002).

Only those objections that are specific are entitled to a de novo review under the statute. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). "The parties have the duty to pinpoint those portions of the magistrate's report that the district court must specially consider." *Id.* (internal

quotation marks and citation omitted). A general objection, or one that merely restates the arguments previously presented, does not sufficiently identify alleged errors on the part of the magistrate judge. *See VanDiver v. Martin*, 304 F.Supp.2d 934, 937 (E.D.Mich. 2004). An "objection" that does nothing more than disagree with a magistrate judge's determination, "without explaining the source of the error," is not considered a valid objection. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Without specific objections, "[t]he functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrate's Act." *Id.*

### III.

### A.

In his motion for summary judgment, Plaintiff contended that the ALJ failed to give Dr. Herndon's letter adequate weight. Pl.'s Mot. Summ. J. at 7, ECF No. 12. Judge Morris disagreed and determined that the ALJ granted Dr. Herndon's opinion adequate weight, especially because Dr. Herndon's letter indicated that Plaintiff's limitations were temporary.

> The ALJ gave the…doctor's letter "only limited weight" because it was "not clear whether this was a permanent restriction or meant for the duration of the claimant's therapy." Plaintiff makes no attempt to address the ALJ's reasoning for discounting Dr. Herndon's opinion, nor does he present any reasons the ALJ should have assigned more weight to her opinion. Neither has Plaintiff demonstrated that Dr. Herndon's limitations were intended to persist for at least twelve months. Indeed, the limitations seem by their terms to be temporary—only "at this time" and "[d]uring his treatment and therapy." The ALJ reasonably understood these limitations to be temporary, and Plaintiff has not meaningfully challenged the ALJ's determination.

Rep. & Rec. at 19, ECF No. 14 (citations omitted).

Plaintiff objects to Judge Morris' recommendation, restating verbatim many of the arguments he made in previous filings. He argues that Dr. Herndon's letter should be granted

- 9 -

controlling weight, specifically that Plaintiff could not push or pull. Plaintiff further contends that the ALJ was required to apply the six factors listed under 20 C.F.R. §404.1527 (examining relationship, treatment relationship, supportability, consistency, specialization, and other factors). Lastly, he argues that if there was ambiguity in Dr. Herndon's letter concerning the duration of Plaintiff's limitations, that "the ALJ should have recontacted Plaintiff's medical providers for clarification." Pl.'s Obj. to Rep. & Rec. at 4, ECF No. 15.

Plaintiff does not explain why Dr. Herndon's letter should be granted great weight. All he offers is the conclusory statement, "[T]he opinion offered by the Plaintiff's doctor should be given controlling weight." *Id.* at 4. He does not accompany this statement with any related arguments or evidence from the record. His conclusory assertion is similar to the absence of evidence in support of his motion for summary judgment, leading Judge Morris to note that Plaintiff did not "present any reason the ALJ should have assigned more weight to her opinion." ECF No. 14 at 19. Plaintiff has now twice neglected to support this argument with evidence from the record or legal authority. Furthermore, he does not address the fact that the limitations expressed by Dr. Herndon appeared to only be temporary, supporting the ALJ's determination that Plaintiff was not disabled.

Plaintiff also neglects to support his next argument with legal authority. He contends that "[i]f the ALJ chose not to accept the rest of Dr. Herndon's findings, she would still need to apply the required factors." *Id.* The factors are contained in 20 C.F.R. §404.157(c) which provides, "Unless we give a treating source's medical opinion controlling weight…we consider all of the following factors in deciding the weight we give to any medical opinion." The six factors are examining relationship, treatment relationship, supportability, consistency, specialization, and other factors. *See* 20 C.F.R. §404.157(c). The regulation does not require the ALJ to articulate her reasoning for every one of the factors. Plaintiff has not provided any legal authority requiring this

of the ALJ. Solely because the ALJ did not articulate all of the criteria in her decision does not mean that the ALJ did not consider the required factors.

Though it does not require an articulation of all six factors, the regulation does require that the ALJ "give good reason" for the weight granted to an applicant's medical source. 20 C.F.R. §404.157(c)(c). Here, the ALJ provided such reasoning when she explained that Dr. Herndon's opinion would be granted only limited weight because it was not clear from the report "whether this was a permanent restriction or meant for the duration of the claimant's therapy." (PageID. 53).

Plaintiff's third argument is also without merit. Plaintiff asserts that "the ALJ should have recontacted Plaintiff's medical providers for clarification" regarding the duration of Plaintiff's limitations. ECF No. 15 at 4. Plaintiff provides no legal authority to support this one sentence assertion. To the contrary, legal authority indicates that the law does *not* require the ALJ to recontact a physician every time they encounter an alleged ambiguity. *See* 20 C.F.R. §404.1520b(b)(2)(i). This decision is left to the ALJ's discretion. *See Weredick v. Comm'r of Soc. Sec.*, 2017 WL 4928649 at *9 (E.D. Mich. Aug. 4, 2017) ("[T]he decision to re-contact a treating source is a matter left to the ALJ's discretion."). The ALJ had sufficient information to make her decision, including Plaintiff's medical record and the opinion of the state agency physician Dr. Flores who determined that Plaintiff had a "light residual functional capacity with postural limitations." (PageID 52–53). As such, the ALJ's decision will stand.

**B.**

Plaintiff's second objection is that Judge Morris "erred by finding that substantial evidence supported the ALJ's opinion." ECF No. 15 at 4. Plaintiff argues that "both the ALJ and the Magistrate Judge misconstrued medical evidence and testimony that ultimately, resulted in an inadequate determination to address Plaintiff's multiple severe medical conditions." *Id.* at 5.

Plaintiff then lists verbatim his injuries from the facts section of his motion for summary judgment. ECF No. 15 at 4 – 6; ECF No. 12 at 3 – 4. He concludes the section by asserting that "[i]t is clear that the above conditions and the medical evidence would make it impossible for Plaintiff to perform work. If the ALJ and Magistrate had not made the above outlined legal errors…Plaintiff would have been found to be disabled." ECF No. 15 at 6. However, Plaintiff did not outline any "legal errors" in his brief. Instead, he simply listed his injuries and attempted to characterize the failure to consider them evidence that he was disabled as legal error. Furthermore, there is substantial evidence supporting the ALJ's decision to deny Plaintiff's claim, including the ALJ's review of Plaintiff's medical record and the assessment by Dr. Flores. *See* ECF No. 14 at 25–26.

Plaintiff has not presented a cognizable objection on this issue and as such, his objection will be overruled.

**IV.**

Accordingly, it is **ORDERED** that Plaintiff's objections to the report and recommendation, ECF No. 15, are **OVERRULED**.

It is further **ORDERED** that the report and recommendation, ECF No. 14, is **ADOPTED**.

It is further **ORDERED** that Plaintiff Armour's motion for summary judgment, ECF No. 12, is **DENIED**.

It is further **ORDERED** that Defendant Commissioner's motion for summary judgment, ECF No. 13, is **GRANTED**.

It is further **ORDERED** that the Commission of Social Security's decision is **AFFIRMED**.

Dated: February 11, 2019                    s/Thomas L. Ludington
                                            THOMAS L. LUDINGTON
                                            United States District Judge